**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| Plaintiff, ) | NO. 5:23-CR-00082-KKC-MAS-1 |
| ) | |
| v. ) | |
| ) | |
| **KENNETH RAY BERRY, II,** ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Kenneth Ray Berry, II ("Berry") conspired to distribute 5 kilograms or more of a substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; and possessed 5 kilograms or more of a substance containing cocaine in violation of 21 U.S.C. § 841(a)(1). [DE 1 (Indictment)]. The United States properly moved for detention under 18 U.S.C. § 3142(f)(1)(B), (C). [DE 32]. After considering the record—including testimony, proffer, and arguments—the Court shall grant the United States' motion and detain Berry pending trial.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

According to the Affidavit in Support of the Criminal Complaint ("Affidavit") prepared prior to Berry's indictment by a federal grand jury, the Drug Enforcement Administration ("DEA") began investigating an individual suspected of laundering of

1

illegal drug proceeds on January 17, 2023. [DE 1-1 (Affidavit), Page ID# 22–23, ¶ 5]. The individual was identified as Berry. DEA Special Agent Christopher Hill ("Agent Hill") testified at the detention hearing that the DEA has physically and electronically surveilled Berry since the inception of the DEA investigation. Through such surveillance, law enforcement also identified Makyla Cheyenne Steward ("Steward")—Berry's girlfriend with whom he lived and shares a child—as another person of interest in the investigation. [DE 44 (Pretrial Services Report ("PSR")), Page ID# 120].

At the time of their arrest, Berry and Steward lived together at 201 Lynnwood Drive ("Lynnwood") and were often seen coming and going together or separately from that address. [DE 29 (Detention Hearing)]; *see also* [DE 31 (PSR), Page ID# 84].[1] Steward also rented another apartment on Redding Road ("Redding Road"), which law enforcement believed to be a stash house utilized by both Berry and Steward. Another location of interest was storage unit H378 at Space Center Storage ("Unit H378"),[2] where law enforcement suspected Berry and Steward also stored illegal controlled substances.

Based on testimony and proffer offered during the detention hearing, it appears that the drug trafficking operation was controlled by both Berry and Steward. The operation, for its size, was exceptionally sophisticated in its strategy

---

[1] According to the PSR, Berry and Steward lived together at the Lynnwood address with their shared child, two year-old Kaliyah Berry, and Steward's five year-old son from a previous relationship with Antonio Simpson. [DE 31 (PSR), Page ID# 84].
[2] According to Agent Hill, Unit H378 was rented to Diana Clay, who is not suspected to be part of the drug trafficking operation.

and the sheer amount of product moving during various transactions. Based on surveillance of such transactions, Agent Hill estimated that Berry and Steward were moving 8–10 kilograms of controlled substances on at least a weekly basis since DEA surveillance began. Agent Hill specifically noted that Berry and Steward compartmentalized different aspects of the operation by working out of three different locations: Lynnwood, Redding Road, and Unit H378.

The activity between July 13, 2023 and Berry and Steward's arrest on July 18, 2023 was the subject of much of the detention hearing. On July 13, 2023, Agent Hill testified that Berry and Steward left the Lynnwood residence in Steward's Honda Accord and drove to The Summit at Fritz Farm in Lexington, Kentucky. Steward exited the vehicle to conduct counter surveillance at a nearby gas station while Berry proceeded to drive the car to the parking lot. After changing spots multiple times, Berry ultimately parked next to a vehicle with a Tennessee license plate. An agent observed the driver of the Tennessee vehicle transfer a red bag to the Honda Accord.

From there, Berry and Steward went to Space Center Storage and accessed Unit H378. Agents observed through electronic surveillance Steward picking up the red backpack and putting it inside Unit H378. On July 17, 2023, agents observed Steward take the red backpack from Unit H378 and transport it Redding Road. On July 15, 2023, agents observed Steward visiting Unit H378 alone. She exited the unit with several rectangular shaped objects under her shirt and in her pockets, which Agent Hill testified to be suspected kilos of an unknown narcotic.

3

On July 18, 2023, law enforcement observed Berry leave the Lynnwood residence with a large white bag appearing to contain a box. [DE 1-1, Page ID# 23, ¶ 6]. Berry entered Steward's Honda Accord, and Steward was a passenger. The two of them again drove to The Summit at Fritz Farm, this time meeting a gray Honda Ridgeline registered in Florida. [DE 1-1, Page ID# 23, ¶ 6]. Agent Hill observed a male exit the Honda Ridgeline and remove the white bag from Steward's Honda Accord. The same male who removed the white bag placed a dark colored Pelican case in the Honda Accord before leaving the parking lot. Berry and Steward drove to Space Center Storage, where law enforcement observed through electronic surveillance Steward placing the Pelican case in Unit H378 and then leaving.

Later that day, Kentucky State Police ("KSP") identified the male with whom Berry and Steward met and exchanged the white bag for the dark Pelican case as Wenceslao Mariscal Vellejo ("Vellejo"). Along with cocaine and U.S. currency, KSP located the white bag retrieved from Steward's Honda Accord. The white bag contained a Cinnamon Toast Crunch Box with vacuum sealed U.S. currency. Vallejo admitted that the Pelican case he gave to Berry and Steward contained cocaine. [DE 1-1, Page ID# 23–24, ¶ 7]. Agent Hill testified that, when law enforcement executed a search warrant for Unit H378, they found approximately 6 kilograms of cocaine inside the Pelican case and one additional kilogram of cocaine in a black backpack.

Law enforcement also executed a search warrant for the Lynnwood residence, where Berry and Steward lived with their children. Agent Hill described that the house smelled like marijuana upon entry. During the search, law enforcement

recovered a fully loaded Mini Draco from the master bedroom closet. They also discovered two money counters and between 15 and 20 thousand dollars in U.S. currency. At the Redding Road residence, law enforcement executed a search warrant and recovered a kilo press and other materials used to package controlled substances.

Agent Hill testified that, on July 18, 2023, Berry and Steward were arrested by KSP in a Texas Roadhouse parking lot. On Steward's person during the arrest was a loaded handgun. Arresting officers noted a strong smell of marijuana emanating from the vehicle and that Berry and Steward appeared to be under the influence of a controlled substance.

## II. LEGAL FRAMEWORK

Given the charges, a detention presumption arises under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, ("BRA") as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). Accordingly, a defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Id.* If the defendant fails to rebut the presumption, he must be detained. Even if the defendant rebuts the presumption, the presumption remains a factor in determining detention. *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

However, if a defendant rebuts the presumption of detention, the burden shifts back to the United States to persuade the Court that detention is nevertheless warranted. Detention, based on danger, must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of evidence. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The nature and quality of proof impacts its probative value and weight in the detention calculus. The § 3142(g) factors guide the analysis.[3]

---

[3] The subsection directs the Court to balance the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;

6

### III.   ANALYSIS

The Court conducted a detention hearing and afforded both sides all procedural rights outlined in the BRA. [DE 42].  Below, the Court shall consider all testimony, proffer, and arguments from the parties to assess whether Berry has overcome the presumption of detention and, if so, whether the United States met its burden of persuasion that the § 3142 factors demand detention.

#### A.   RISK OF NONAPPEARANCE

Preliminarily, the Court finds that Berry overcame the presumption as to his risk of nonappearance.  As noted on the record and in the PSR, Berry has a moderately significant criminal record dating back to 2011.  However, there are several factors that weigh in favor of overcoming the presumption.  Berry had significant family and community support at the detention hearing and has deep ties to the area as a lifelong resident of the Eastern District of Kentucky.  Berry's father, Kenneth Berry Sr. ("Berry Sr."), offered testimony which the Court finds compelling

---

(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

to demonstrate Berry's risk of nonappearance could be mitigated. Berry Sr. is a city government employee with stable housing who testified to having a close and loving relationship with his son. He testified that not only would he supervise Berry during the time he was not working, but that he would personally ensure that Berry was present for any court appearances by taking time off from work if necessary.

Berry's counsel also thoroughly proffered that, if released, Berry is prepared to take serious measures to treat his substance use disorder[4] by undergoing inpatient treatment as soon as reasonably possible. Counsel proffered that Berry could be released to home incarceration with his father, only to leave the residence to undergo outpatient treatment. Alternatively, counsel requested that Berry enter inpatient treatment for his substance use disorder while he awaits trial.

The above testimony and proffer lead the Court to find that Berry has met burden of production to show that he is not at risk of nonappearance. Thus, the burden shifts to the government to demonstrate by a preponderance of the evidence that Berry is at risk of not appearing for future court proceedings. The United States points to Berry's expected term of imprisonment if convicted—25 years—is a prominent factor of Berry's risk of nonappearance. Indeed, courts have recognized that a long prison sentence could motivate some defendants to flee. See *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing

---

[4] According to the PSR, Berry reported that he believes he suffers from Anxiety and Depression, although he has not been formally diagnosed with such conditions. Nonetheless, he reported self-medicating by taking Xanax. Moreover, he reported that his substance use began at age 13, with the daily use of cannabinoids and benzodiazepines daily up to 9 days prior to his arrest. In this matter. [DE 44 (PSR), Page ID# 121].

8

that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee"). The United States also points to Berry's substance use disorder and lack of employment as factors that contribute to Berry's risk of nonappearance. Further, the United States indicated that it was also opposed to Berry's transfer to an outpatient facility that does not have adequate security and poses a risk that Berry could leave at any time.

The Court appreciates the factors outlined by the United States which generally lend themselves toward finding Berry a risk of nonappearance: his anticipated sentence, his substance use disorder, and his current unemployment status. However, the United States has failed to establish by a preponderance of evidence that Berry is a risk of nonappearance. The Court is persuaded by the strong showing of community and familial support and his strong history of appearing for Court when ordered to do so. Moreover, the Court could feasibly craft conditions to mitigate any risk of nonappearance, such as home incarceration or the use of a monitoring device.

### B.     RISK OF DANGER

Berry likewise successfully rebutted the presumption of detention as to his risk of danger to the community. Counsel's proffer that Berry could be subject to home incarceration under the close supervision of his father constitutes some showing that Berry's danger to the community could be mitigated by conditions created by the Court. The Court finds that these considerations are sufficient to meet Berry's low production burden, overcoming the detention presumption as to danger. *See Stone*,

608 F.3d at 945; *see also Hernandez*, 2002 WL 1377911, at *2 (requiring "probative, credible evidence to rebut the presumption").

However, the BRA factors ultimately weigh in favor of detention and the Court does not find that any conditions or combination of conditions will effectively address the appreciable danger of continued drug trafficking activity. For the reasons discussed below, the Court finds that the United States has shown by clear and convincing evidence that danger-based detention is required.

1. **Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance, [or] firearm[.]" 18 U.S.C. § 3142(g)(1). The allegations set forth in the Complaint, and further elaborated upon during the detention hearing, suggest that Berry operated a sophisticated trafficking operation peddling controlled substances such as cocaine.

Both the nature of the offense—a presumption drug trafficking case—and the surrounding circumstances heavily favor Berry's detention. The BRA manifestly signals Congressional belief in the inherent, exceptional dangerousness of the at-issue offenses. And as discussed, the detention presumption stemming from them "does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class [of crimes].'" *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)). Drug trafficking is, in and of itself, an offense that poses a serious danger

to the community. *Stone*, 608 F.3d at 955 n. 6. Thus, the presumption persists as a pro-detention consideration and, overall, this factor firmly favors detention.

### 2. Weight of the Evidence of Dangerousness

The second factor—the weight of the evidence of a person's dangerousness—goes only to the likelihood that the defendant will pose a danger to the community or a risk of flight; it is not a pretrial determination of guilt. *Stone*, 608 F.3d at 948. In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(j).

The facts alleged in the Complaint, the testimony offered by Agent Hill, and the United States' proffer constitute very serious allegations that Berry and Steward ran a highly sophisticated drug trafficking operation. Agent Hill testified as to multiple transactions involving suspected narcotics, all involving Berry and Steward. By way of example, Agent Hill described multiple transactions observed by law enforcement in which Berry was physically present during exchanges with alleged suppliers at The Summit at Fritz Farm.

In addition to showing the existence of the alleged drug trafficking operation, the weight of the evidence suggests that Berry had a prominent role in the operation's routine activities. On multiple occasions, Berry was observed driving Steward's Honda Accord to meet with alleged suppliers. Berry was also observed coming and going from the three locations used by the suspected trafficking operation—Lynnwood, Redding Road, and Unit H378. The weight of the evidence suggests that

Berry was not passively involved in the trafficking operations daily activities, as observed by law enforcement through physical and electronic surveillance.

Moreover, the weight of the dangerousness is aggravated by the sheer volume of drugs Berry was involved with moving during the DEA's investigation. Agent Hill testified that Steward and Berry were making drops with suspected suppliers at least once a week and moving between 8–10 kilograms of controlled substances per drop over the course of about seven months.

These facts all heavily favor detention, as they depict a sophisticated trafficking operation moving large quantities of drugs by using multiple, compartmentalized locations. Such sophisticated trafficking schemes pose the greatest risk for persisting distribution activity. *See United States v. Bucio*, No. CR 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme"). There is weighty evidence of Berry's potential danger to the community, as the risk of continued trafficking falls squarely within the BRA's danger concept. *See United States v. Holden*, No. 17-CR-33-JMH-1, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017) (mentioning that the dangers associated with drug trafficking "leading to near fatal overdoses cannot be overstated"). Accordingly, the second factor strongly favors Berry's pretrial detention.

### 3.     History and Characteristics of the Person

The third BRA factor considers the history and characteristics of the person. *See* 18 U.S.C. § 3142(g)(3). The Court recognizes that Berry has a strong and impressive community behind him but, on balance, this factor largely favors detention. The Court specifically notes that Berry already has several drug trafficking convictions, and his criminal history as a whole has escalated since his first conviction in 2011. While his prior convictions involved relatively small amounts of controlled substances, the instant allegations involve a sophisticated and voluminous trafficking operation. Also relevant here is that Berry's history does not reflect stable employment, nor does it reflect that he has sought treatment for his very serious substance use disorder. Together, the Court finds that this factor weighs in favor of detention.

### 4.     Nature and Seriousness of the Danger

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In the context of drug trafficking, the Court considers Berry's potential danger to the community to be grave. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger"); *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) ("[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[.]").

The quantities of cocaine alleged to be distributed aggravates the danger associated with Berry's conduct. *See United States v. Bland*, No. CR PWG-15-141, 2020 WL 1904742, at *3 (D. Md. Apr. 16, 2020) (concluding that "given the sheer quantity of narcotics Defendant has shown that he is capable of obtaining and distributing, Defendant poses a significant danger to the safety of the community"); *United States v. Holden*, No. 17-CR-33-JMH-1, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017) (noting that the dangers associated with drug trafficking "leading to near fatal overdoses cannot be overstated"). The evidence discussed above viewed through the BRA lens heavily weigh in favor of detention.

Another element to government's allegations is that the presence of firearms aggravates the danger posed to the community. Specifically, the United States points to the Mini Draco with a fully loaded banana clip found in the master bedroom closet at the Lynnwood residence, and the firearm on Steward's person at the time of her arrest. Of greatest concern to the Court is the firearm found at Lynnwood in a shared closet in Berry's primary residence. As a convicted felon, Berry is well-aware that he is prohibited from possessing firearms. Although counsel proffered that the firearm belongs to Steward, the Court is nevertheless concerned by Berry's probable access to a dangerous firearm when he is prohibited from possessing firearms as a felon.

In sum, the United States has shown by clear and convincing evidence that the BRA factors weigh in favor of finding that Berry poses a significant danger to the community. Given the nature of the allegations, the Court cannot be reasonably assured that Berry will not resume involvement with drug trafficking if he is

released. Put differently, the Court cannot identify a condition or combination of conditions that could reasonably ensure the safety of the community if Berry were to be released pending trial. *See, e.g., United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged drug distribution scheme from his home). Accordingly, the BRA requires that Berry be detained pending trial based on his potential danger to the community.

## IV. CONCLUSION

Ultimately, the Court finds that the United States has not proved by a preponderance of the evidence that no conditions could ensure Berry's future appearance at Court proceedings. However, the Court does find that the Government has shown—by clear and convincing evidence—that no condition or combination of conditions could reasonably assure community safety. Accordingly, the Court **GRANTS** the United States' oral detention motion. As the BRA mandates in this case, Berry shall remain in custody pending trial.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 8th of August, 2023.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY